AO 106 (Rev. 04/010) Application for Search Warrant     AUTHORIZED AND APPROVED/DATE:    EMJ 3/13/2024

# UNITED STATES DISTRICT COURT
### for the
**WESTERN**     DISTRICT OF     **OKLAHOMA**

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | Case No: MJ-24- *226-AMG* |
| 2308 County Road 1280, | ) | |
| Blanchard, Oklahoma 73010 | ) | |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is (*check one or more*):
- ☒ evidence of the crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |
| 18 U.S.C. § 2252A(a)(2) | Distribution of Child Pornography |

The application is based on these facts:

See attached Affidavit of Special Agent Marisol Flores, Federal Bureau of Investigations, which is incorporated by reference herein.
- ☒ Continued on the attached sheet(s).
- ☐ Delayed notice of _____ days (*give exact ending date if more than 30 days*) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

 

_____
*Applicant's signature*

Marisol Flores
Special Agent
Federal Bureau of Investigations

Sworn to before me and signed in my presence.

Date: __3/13/2024__

_____
*Judge's signature*

City and State: Oklahoma City, Oklahoma     AMANDA MAXFIELD GREEN, U.S. Magistrate Judge
*Printed name and title*

## THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Marisol Flores, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

### INTRODUCTION

1.    I have been employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI) since May 2015, and I am currently assigned to the Oklahoma City Division. Since joining the FBI, I have been involved in investigations of child exploitation matters and computer crimes against children. I am currently assigned to investigate violations of federal law involving the exploitation of children. I have gained expertise in conducting such investigations through in-person trainings, classes, and everyday work in my current role as an SA with the FBI.

2.    As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

1

3.      I am investigating the online activities of Michael Rios,[1] who is believed to reside at 2308 County Road 1280,[2] Blanchard, Oklahoma 73010 (the "SUBJECT PREMISES," as further described in Attachment A). As shown below, there is probable cause to believe that Michael Rios (Rios) possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and distributed child pornography in violation of 18 U.S.C. § 2252A(a)(2). I submit this Application and Affidavit in support of a search warrant authorizing a search of the SUBJECT PREMISES. Located within the SUBJECT PREMISES, I seek to seize evidence, fruits, and instrumentalities of the foregoing criminal violations, specifically Rios' devices in which he uses to communicate with other individuals, to include an undercover law enforcement officer, for the purposes of accessing, viewing, and distributing child pornography, and any other electronic devices to which Rios could have transferred files to. I request authority to search the entire SUBJECT PREMISES, including the residential dwelling, the curtilage of the residence, including, but not limited to storage buildings, vehicles located on the SUBJECT PREMISES, the persons in the SUBJECT PREMISES, at the time of the search, and any computer (as broadly defined in 18 U.S.C. 1030(e)) reasonably believed to belong to or

---

[1] In August of 2012, in Oklahoma County, Rios was charged with several criminal charges to include rape in the first degree by instrumentation and indecent or lewd acts with a child under sixteen. Rios was acquitted of these charges, and all the associated charges, in 2013 by a jury trial. In November of 2022, in Oklahoma County, Rios was charged with indecent or lewd acts with a child under sixteen and possession of obscene material involving the participation of a minor under the age of eighteen. In November of 2023, the indecent or lewd acts with a child under sixteen was amended to manufacturing child pornography. Rios is currently awaiting trial for these charges.

[2] On some maps, Country Road 1280 in Blanchard, Oklahoma, is also listed as NW 25th St. in Blanchard, Oklahoma.

have been used by Michael Rios located therein, where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

4.      Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the foregoing violations are presently located at the SUBJECT PREMISES.

## BACKGROUND OF THE INVESTIGATION

5.      Between on or about January 8, 2024, and January 9, 2024, an FBI Online Covert Employee (OCE), who is a member of the FBI Birmingham Division's Child Exploitation and Human Trafficking Task Force in Birmingham, Alabama, was connected to the Internet in an online undercover capacity. The OCE accessed two private channels on the Signal Application.[3] These private channels, within the Signal Application, were dedicated to users who have a sexual interest in children. The private channels were by invite only and each user had to be provided a specific link to gain access to the channels. Users within the channels were openly sharing Child Sexual Abuse Material (CSAM)

---

[3] The Signal application is an encrypted messaging service for instant messaging, voice, and video calls. The instant messaging function includes sending text, voice notes, images, videos, and other files through a secured transmission. Communication may be one-to-one between users, through direct messaging, or for group messaging in larger private channels. Signal is a free, privacy-focused messaging and voice talk app you can use on Apple and Android smartphones, and via desktop. Communications on Signal are end-to-end encrypted, which keeps the content of communications between users secure from the company's view. An active phone number is needed to create a new account.

amongst one another in an open forum style of setting. During a covert online session, Signal User: "Harry +1 405-613-9147" distributed four videos, within the private channel titled "Babysex," which depicted CSAM. The videos were distributed to the group on January 8, 2024, at or around 12:32 PM. One of the videos can be described as follows:

CFE11EDD-95B9-44F6-87A7-42C95E710B25.MP4

25 seconds in length

Description: The video depicts a prepubescent female in a bathtub. The child is holding an adult, erect penis in both her hands while putting her mouth on and sucking the penis. The child pulls away from the penis and looks up. At that time, a hand enters the screen and gestures for the child to resume the oral sex. Then the hand is placed on the child's head as the child is forced into continuing the oral sex.

During another covert online session, Signal User: "Harry +1 405-613-9147" distributed nineteen images, ten of which depicted CSAM, within the private channel titled "Grupo sin límites." The images were distributed to the group on January 9, 2024, at or around 10:08 PM. Two of the images can be described as follows:

One image depicts two minor females standing in front of a white wall. Both minor children are naked exposing their vaginas. One child has dark brown hair and is covering her chest area with her hands. The other child has her breast exposed with her hands behind her back.

The other image has a minor female squatting on a brown table and there is a red backdrop behind her. The child has on white net hose on her legs and is wearing white shoes. There is white lace around her pelvic area, with the letters "OK" on the lace. The child's vagina is exposed, and she is not wearing any additional clothing. On the left hand of the photo is script, "for Pollyfan."

6.    On or about February 8, 2024, an administrative subpoena was served to T-Mobile requesting subscriber information for telephone number 405-613-9147. On or about February 9, 2024, T-Mobile provided the following results:

> Customer Name: Michael Rios
>
> Subscriber Name: Michael Rios
>
> Service Address: 2927 SW 55th St., Oklahoma City, OK 73119 USA
>
> Billing Address: 2927 SW 55th St., Oklahoma City, OK 73119 USA
>
> Start Time: Jul 21, 2023 07:00:00 (UTC)
>
> End Time: Jan 01, 0001 08:00:00 (UTC)

7.    2927 SW 55th St., Oklahoma City, Oklahoma, is owned by Kenneth and Janis Booth, Rios' stepfather, and mother.  Physical surveillance was conducted at 2927 SW 55th St., Oklahoma City, Oklahoma, and it was determined Rios was not residing there. Open-source checks showed Rios' residential address as, 2308 County Road 1280, Blanchard, Oklahoma, 73010, the SUBJECT PREMISES.  The SUBJECT PREMISES was also listed as Kenneth and Janis Booth's residence on open-source checks, as well as one of their vehicles.

5

8.      Physical surveillance was conducted at the SUBJECT PREMISES on February 17, 2024, in which a white travel trailer, a silver GMC truck, and gold 4-door sedan and a dark truck were observed. On February 19, 2024, physical surveillance was conducted at the SUBJECT PREMISES in which the following vehicles and their license plates were observed: White Kodiak Ultra-lite travel trailer bearing OK Chickasaw Nation Tribal tag: CN18761, Silver GMC Sierra truck bearing OK Chickasaw Nation Tribal tag: CN09042, Gold Mercury Montego bearing OK Chickasaw Nation Tribal tag: CN09071. The Kodiak travel trailer is registered to Janis D Booth at 2927 SW 55th St., Oklahoma City, OK 73119, with a secondary owner of Kenneth Booth. The GMC truck is registered to Janis Towe[4] at 2308 County Road 1280, Blanchard, OK 73010, the SUBJECT PREMISES, with a secondary owner of Kenneth Booth. The Mercury is registered to Kenneth L. Booth at 2927 SW 55th St., Oklahoma City, OK 73119. Also observed this day, was the mailbox of the SUBJECT PREMISES with the following in black lettering: "Booth Rios 2308 CR 1280".

9.      On March 5, 2024, a pole camera was installed to capture the public view of the entrance and exit of the SUBJECT PREMISES. On the morning of March 6, 2024, a Ford F-250 is observed on the pole camera at the entrance of the SUBJECT PREMISES. An individual was observed outside of the Ford F-250 for a short time, then departing in the Ford F-250.

10.     On March 7, 2024, physical surveillance observed a gray Ford F-250, bearing

---

[4] Towe is a former last name of Janis Booth.

Oklahoma license plate NTY-146, depart the SUBJECT PREMISES. This vehicle is registered to Michael Rios at 2927 SW 55th St., Oklahoma City, Oklahoma. Rios was identified as the driver of the Ford F-250 bearing Oklahoma license plate NTY-146. During surveillance, Rios and his vehicle were observed at a construction work site. While physical surveillance was observing Rios, a phone call from law enforcement was made to the Signal Application user "Harry +1 405-613-9147," at phone number 405-613-9147. At the time the phone call was made, Rios was observed walking over to where he had left his phone,[5] then picked up the phone, touched the phone, and then set the phone back down where he had it. This coincided with law enforcement hearing phone ringing and then an automated voicemail, while having dialed Signal Application user "Harry +1 405-613-9147" at phone number 405-613-9147.

11.    From March 7, 2024, to March 11, 2024, the Ford F-250 belonging to Rios has been observed, via pole camera footage, entering and exiting the SUBJECT PREMISES.

12.    Based on my training and experience, individuals who possess and distribute CSAM will use multiple devices to store and access their collection of CSAM. With Rios identified as the T-Mobile subscribed customer to phone number 405-613-9147 and addressing his cell phone during a phone call made by law enforcement to phone number 405-613-9147, I believe Rios uses phone number 405-613-9147. Therefore, I believe Rios

---

[5] Prior to the phone call made by law enforcement, Rios was observed by physical surveillance on this cell phone. Rios had placed the cell phone on bricks which were on top of a scaffolding structure prior to the phone call made by law enforcement.

is the Signal Application user "Harry +1 405-613-9147," who possessed and distributed CSAM, and I am seeking authorization to search Rios' devices where he is likely storing CSAM.

13.    I am aware that computers and computer-related media are portable, and that evidence can be stored on media as small as a fingernail-sized memory card. I have learned from other law enforcement officers who have executed search warrants in investigations of this nature, and my own training and experience, that computers and digital devices containing child sexual abuse material and associated communications can be located in vehicles and on the persons of occupants located on the premises. In addition, I am aware that people frequently transport their computers and cellular telephones on their person and in their vehicles. Due to the portable nature of electronic storage devices and the ease with which they can be transported and hidden, I am requesting authority to search any vehicles on the SUBJECT PREMISES, as well as persons if on the SUBJECT PREMISES, when the search warrant is executed.

## **DEFINITIONS**

14.    The following definitions apply to this Affidavit and Attachment B:

a. "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text based online communications such as Internet forums and email.

8

b. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

c. "Child Sexual Abuse Material" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

d. "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e)(1).

e. "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed

9

disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

f. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alphanumeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

g. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

h. "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

i. "Minor" means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

j. "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, see 18 U.S.C. Section 2256(8)(A), or that have been created, adapted, or modified to appear to depict an identifiable minor, see 18 U.S.C. Section 2256 (8)(C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* U.S.C. § 2256(2)(A).

k. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

l. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche,

prints, slides, negatives, videotapes, motion pictures, photocopies); mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

m. A "storage medium" or "storage device" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

n. A "website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as HyperText Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text transport Protocol (HTTP).

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

15.     Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related

12

documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

13

16.     In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In cases involving child sexual abuse material where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues.  In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media).

17.     Furthermore, I know that modern tablets (a type of "computer," as broadly defined in 18 U.S.C. § 1030(e)) can typically "sync" with a traditional desktop or laptop computer.  The purpose of syncing a tablet to a traditional computer is to back up data that is stored on the tablet so that it is not permanently lost if the portable tablet is lost or damaged.  Also, tablet users may move files off the tablet and onto a computer to free up storage space on the tablet.  Similarly, computer (*e.g.*, desktop computers, tablets, etc.) users may move files off of one computer onto another computer or digital file storage devices such as a thumb drive, a DVD, an external hard drive to free up space on the computer.  For this reason, I am seeking authorization to seize all computers and digital file storage devices reasonably believed to belong to or have been used by Michael Rios at the SUBJECT PREMISES—not any particular computer.

18.     Finally, I know that many modern smart tablets and smart cell phones, including Apple and Samsung-brand tablets and cell phones, can be encrypted by the user using his finger and/or thumbprint or facial image to lock and unlock the device.  Without

14

the user's prints, the devices are difficult, if not impossible, for law enforcement personnel to unlock.  Accordingly, I am requesting that, to the extent law enforcement seizes any tablet or smart cell phones or other computer described in Attachment B during a search of the SUBJECT PREMISES (described in Attachment A), and if such device(s) features such encryption, then law enforcement may, while executing the search warrant at the SUBJECT PREMISES, use Rios' finger and/or thumbprint and/or facial image with any such encryption feature to attempt to unlock the device.

## CONCLUSION

19.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that Michael Rios, residing in the SUBJECT PREMISES, possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and distributed child pornography in violation of 18 U.S.C. § 2252A(a)(2).  Additionally, there is probable cause to believe that evidence of the criminal offenses is located in the SUBJECT PREMISES, and this evidence, listed in Attachment B to this Affidavit, incorporated herein by reference, is contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses. As described in the probable cause section, there is probable cause to believe Michael Rios violated the aforementioned statutes.  I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.


MARISOL FLORES
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Signed and sworn before me this 13th day of
March, 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

16

## ATTACHMENT A

## DESCRIPTION OF THE PREMISES

### 2308 County Road 1280, Blanchard, OK 73010

The SUBJECT PREMISES, 2308 County Road 1280, Blanchard, Oklahoma 73010, is located within Oklahoma County, in the Western District of Oklahoma.  The SUBJECT PREMISES has a single-family, single-story dwelling, and a trailer parked in front of the single-family, single-story dwelling.  The single-family dwelling is constructed of what appears to be green siding, and white trim.  The trailer is white in color and has an Oklahoma Chickasaw Nation Tribal license plate of 8761. The mailbox on the property is white in color and has black lettering of "Booth Rios 2308 CR 1280".



The search of the SUBJECT PREMISES includes the residential dwelling and the curtilage of the residence, including, but not limited to, storage buildings, vehicles, any additional dwellings, vehicles, and appurtenances.  The search of the SUBJECT

1

PREMISES also includes the search of any persons found at or arriving to the SUBJECT

PREMISES during the execution of the search. These persons include, but are not limited

to, Michael Rios, whose date of birth is 7/XX/1981, and whose photo is depicted below:



**ATTACHMENT B**

**LIST OF ITEMS TO BE SEIZED**

Contraband, evidence, fruits, and instrumentalities related to Rios distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2) or possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), in any form, including, but not limited to:

1.      To the extent they are reasonably believed to belong to or be used by Michael Rios: computer(s), as broadly defined in 18 U.S.C. § 1030(e) and all other digital file storage devices, including (but not limited to) desktop computers, smart phones, e-readers, tablets, thumb drives, SD cards, DVDs, compact discs, and external hard drives; all computer hardware, computer software; computer related devices and documentation; computer passwords and data security devices; videotapes; video recording devices; video recording players; and video display monitors that may be, or are used to visually depict child pornography or child erotica, display or access information pertaining to a sexual interest in child pornography, display or access information pertaining to sexual activity with children, or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

2.      Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

3.      In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

4.      Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by the operator of the computer or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

5.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs

1

and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

8.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

9.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

10.     Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

11.     To the extent they are reasonably believed to belong to or be used by Michael Rios: any and all cameras, film, videotapes or other photographic equipment capable of storing images or videos of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

2

12.    Any and all visual depictions of minors to see if they match images of minors in child pornography.

13.    Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

14.    To the extent they are reasonably believed to belong to or be used by Michael Rios: any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

15.    Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

16.    To the extent they are reasonably believed to belong to or be used by Michael Rios: any and all equipment associated with routers, modems, and network equipment used to connect computers to the Internet.

If a smart cell phone or other computer, as described herein, is found that requires access by using a finger or thumbprint or facial recognition to unlock the device, then, while executing the search warrant at the SUBJECT PREMISES, a law enforcement officer may press the finger or thumbprint of Michael Rios present at the SUBJECT PREMISES onto the device to try to unlock it or use their face to unlock the device via facial recognition.

3